UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE CRANFORD,<br><br>   Plaintiff,<br><br>   v.<br><br>ANTONIA OKPALA,<br><br>   Defendant. | Case No.: 1:14-cv-00921-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT<br><br>[ECF No. 47] |

Plaintiff Archie Cranford is a civil detainee proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

Plaintiff consented to the United States Magistrate Judge jurisdiction. Defendant has not consented or declined magistrate judge jurisdiction. Therefore, this action was referred to the undersigned pursuant to pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Defendant Okpala's motion for an order declaring Plaintiff a vexatious litigant, requiring security, and issuance of a pre-filing order, filed July 28, 2016.

///

///

///

# I.

# RELEVANT HISTORY

This action proceeds against Defendant Antonia Okpala for deliberate indifference to Plaintiff's medical condition in violation of the Fourteenth Amendment.

Defendant filed an answer to Plaintiff's second amended complaint on January 19, 2016. On January 27, 2016, the Court issued the discovery and scheduling order.

As previously stated, on July 28, 2016, Defendant filed a motion for an order declaring Plaintiff a vexatious litigant. Despite being served with the motion, Plaintiff did not file an opposition.[1] On October 27, 2016, Defendant filed a request for judicial notice of the decision declaring Plaintiff a vexatious litigant.

# II.

# DISCUSSION

**A.    Motion to Declare Plaintiff a Vexatious Litigant and Require Security**

Defendant Okpala seeks to have Plaintiff declared a vexatious litigant under California law and ordered to post security under Local Rule 151(b) of the Eastern District of California, which provides:[2]

> On its own motion or on motion of a party, the Court may at any time order a party to give a security, bond, or undertaking in such amount as the Court may determine to be appropriate. The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking, although the power of the Court shall not be limited thereby.

Thus, in ordering a party to give security under Local Rule 151(b), the Court must determine that (1) the party is a vexatious litigant and (2) there is not a reasonable probability that the party will prevail pursuant to California Civil Procedure Code section 391.1, which provides:

> In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to

---

[1] Pursuant to Local Rule 230(l), Defendant's motion is deemed submitted for review without oral argument.

[2] Although Defendant is also seeking the issuance of a pre-filing order based on vexatiousness, which is governed by federal law and subject to a more rigorous standard, such request is moot as Plaintiff is subject to a pre-filing order as set forth by court order case number 1:14-cv-00055-AWI-MJS (PC), Cranford v. Crawford, issued on September 27, 2016, prior to the filing of the instant motion by Defendant.

2

furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3  The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant.

Cal. Civ. Proc. Code § 391.1.

### B.   Plaintiff Declared Vexatious Litigant in Case Number 1:14-cv-00055

1.   <u>Declaration of Vexatiousness in Same or Substantially Similar Circumstances</u>

In relevant part, a vexatious litigant is defined under California law as one who "[h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction or occurrence." Cal. Civ. Proc. Code § 391(b)(4). As requested by Defendant, the Court takes judicial notice the Court's order in 1:14-cv-00055-AWI-MJS (PC), <u>Cranford v. Crawford</u>, in which Plaintiff was declared a vexatious litigant on September 27, 2016.[3] (1:14-cv-00055-AWI-MJS (PC)-ECF No. 77; ECF No. 55.) That case also involved a medical indifference claim under the Fourteenth Amendment against a single defendant which took placed at Coalinga State Hospital. In support of its vexatious litigant order, the Court found that there were at least twenty qualifying lawsuits which had been adversely determined against Plaintiff in the past ten years. (ECF No. 76.) Although the Court did not require Plaintiff to post security prior to proceeding in that action because he had requested to voluntarily dismiss the action, the Court nonetheless issued a pre-filing order. Thus, Plaintiff was declared a vexatious litigant, and the inquiry now turns to whether that case and this case are "based upon the same or substantially similar facts, transaction or occurrence." Cal. Civ. Proc. Code § 391(b)(4).

The commonly accepted meaning of the phrase "substantially similar" as used in section 391(b)(4) has been interpreted to apply, and subdivision (b)(4) is satisfied if this case and case number 1:14-cv-00055-AWI-MJS (PC), <u>Cranford v. Crawford</u>, "arise from essentially the same facts, transaction or occurrence," a determination which is made by examining the factual circumstances underlying the two cases. <u>Devereaux v. Latham & Watkins</u>, 32 Cal.App.4th 1571, 1581 (Cal. Ct. App.

---

[3] <u>See</u> Fed. R. Evid. 201; <u>see also</u> <u>United States v. Howard</u>, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (finding that the court may take judicial notice of court records in other cases).

1995), disapproved in part on other grounds by Moran v. Muraugh Miller Meyer & Nelson, LLP, 40 Cal.4th 780, 785 n.7 (Cal. 2007). Plaintiff brought case number 1:14-cv-00055-AWI-MJS (PC), Cranford v. Crawford, against Defendant Christina Crawford, a nurse at Coalinga State Hospital. (ECF No. 1.) Plaintiff alleged that in October or November of 2013, he suffered a serious injury to his groin. At least one of his testicles was driven up into his pelvis and it remains there. Plaintiff explained to Defendant Crawford the nature of injury and requested to see a doctor. Defendant Crawford told Plaintiff to take pain medication, and advised him she would follow up with him later, but failed to do so. Thus, the underlying nature of Plaintiff's claim, denial of appropriate medical treatment by a nurse at Coalinga State Hospital is "substantially similar" under California law. Cal. Code Civ. Pro. § 391(b)(4). The identity of the parties differs, but it is of "no significance" here given that in both cases Plaintiff sued medical staff at Coalinga State Hospital alleged to be responsible for his medical condition. Devereaux, 32 Cal.App.4th at 1581.

Accordingly, the Court finds that Plaintiff was previously declared a vexatious litigant by this Court in 1:14-cv-00055-AWI-MJS (PC), Cranford v. Crawford, which was based upon the same or substantially similar facts at issue in this action, and Plaintiff is therefore a vexatious litigant as defined in California Civil Procedure Code section 391.

    2.    Reasonable Probability of Prevailing on Fourteenth Amendment Claim

Next, the Court must also find that Plaintiff does not have a reasonable probability of prevailing in this case. Cal. Civ. Proc. Code § 391.3. This requires "the defendant [to] show that the plaintiff's recovery is foreclosed as a matter of law or that there are insufficient facts to support recovery by the plaintiff on its legal theories, even if all the plaintiff's facts are credited." Devereaux, 32 Cal.App.4th at 1583. In making this determination, the Court performs an evaluative function and is required to weigh the evidence; it does not assume the truth of Plaintiff's allegations. Moran, 40 Cal.4th at 784-786; Golin v. Allenby, 190 Cal.App.4th 616, 635 (Cal. Ct. App. 2010).

This action is proceeding on Plaintiff's Fourteenth Amendment medical care claim and the core judicial inquiry is whether the defendant knowingly disregarded a substantial risk of harm to Plaintiff's health. As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. Jones v. Blanas, 393 F.3d 918, 931-932 (9th Cir.

2004). His right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315 (1982). Thus, a determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." Id. at 321.

While Plaintiff may be "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," the Constitution requires only that courts ensure that professional judgment was exercised. Id. at 321-322. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 322-323. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." Ammons v. Wash. Dep't of Soc. & Health Servs., 648 F.3d 1020, 1029 (9th Cir. 2011) (citations and internal quotation marks omitted).

Applying these standards, the Court finds that Plaintiff has failed to demonstrate that he has a reasonable probability of succeeding in this action.

In the operative complaint, Plaintiff contends that in 2012, Defendant Okpala locked the housing unit door after receiving a phone call from the hospital's dining hall informing Defendant that Plaintiff had just had scolding hot split pea soup poured in his lap and was suffering from severe burns. Defendant locked the unit door in an effort to prevent Plaintiff treatment for his injuries. Plaintiff approached the Defendant on several occasions regarding his injuries from the burn and each time he was refused. Plaintiff did not file an opposition, and his evidence is therefore limited to the allegations raised in the complaint.

Defendant submits evidence of her declaration, Plaintiff's deposition testimony, and Plaintiff's medical records in support of her argument that Plaintiff does not have a reasonable probability of prevailing on his claim.

As an initial matter, the allegations in the second amended complaint allege that Defendant Okpala's alleged actions took place in 2012; however, Nurse Okpala declares that she did not become

employed at Coalinga State Hospital until February 3, 2014.  (Okpala Decl. ¶ 2, ECF No. 47.)  Thus, based on Okpala's declaration it was not possible that the acts alleged in the second amended complaint occurred in 2012 by Defendant Okpala because she was not even working at Coalinga State Hospital then.

Second, at this deposition, Plaintiff testified that the soup incident occurred at lunch, but he does not remember the exact date of the soup incident and does not remember the year.  (Phillips Decl., Ex. A (Plaintiff Dep.) at 20:9-20.)  Plaintiff indicated only that "it's been a while," and "maybe" two years.  (Id. at 20:22-24.)  Plaintiff further testified that it occurred on a "Tuesday."  (Id. at 21:2-4.)  Defendant submits Plaintiff's medical records which show that the soup spill at issue occurred on June 20, 2014, at 12:45 p.m.  (Phillips Decl., Ex. B.)  Plaintiff filled out an Office of Patients' Rights Complaint Form, in which he handwrote that he accidentally had pea soup spilled on him "on the above date [6/20/14] at 12:45 p.m."  (Id., Ex. B at p. 2.)  He further writes that he left his meal and sought out the unit "nures" [sic], but did not receive medical care "but did a grate [sic] deal of lip service about she had to see my burns."  (Id.)

June 20, 2014, was a Friday—not a Tuesday.[4]  Nurse Okpala declares that it was impossible for her to have denied Plaintiff medical treatment on Friday at 12:45 p.m. because, effective March 23, 2014, Thursdays, Fridays, and Saturdays were her days off, and her work hours were 1845 to 0715 (6:45 p.m. to 7:15 a.m.).  (Okpala Decl. ¶ 3, ECF No. 47.)  Okpala further declares that she did not work any extra time (overtime or additional shifts) from June 18, 2014, to June 24, 2014.  (Id. ¶ 4.)

Third, Plaintiff's deposition testimony raises evidentiary questions as to his claim for relief against Defendant Okpala.  At his deposition, Plaintiff testified that his claim is based on hearsay evidence.  Plaintiff testified that he was "informed that the PDR [patient dining room] had called the unit," and that Nurse Okpala "locked the door…so I was told."  (Plaintiff Dep. at 22:25-3.)  Plaintiff could not identify who told him, and merely stated "another staff member," "a float," and could not

---

[4] The Court takes judicial notice of the fact that June 20, 2014, was a Friday, not a Tuesday, as the accuracy of a calendar cannot be reasonably questioned.  Fed. Evid. 201; see, e.g., Wayne v. Leal, No. 07CV1605 JM (BLM), 2009 WL 2406299, at *4 (C.D. Cal. Aug. 4, 2009) (noting that Federal Rule of Evidence 201(b) permits a court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, such as an almanac, dictionary, calendar, or other similar source").

provide a name because he did "not pay attention to floats." (Id. at 23:6-8.) Plaintiff confirmed again that he could not see who locked the door stating, "I didn't see that. I can't see it, it's locked from the other end." (Id. at 35:10-12.) Plaintiff simply stated that he was told it was Nurse Okpala who locked the door, but again he could not identify the source.

Furthermore, at his deposition, Plaintiff clarified that the basis of his medical claim against Nurse Okpala is that when a psych tech took him to see a nurse, Nurse Okpala saw him and took off to an unknown location. (Plaintiff Dep. at 25.) Plaintiff clarified that he is suing Defendant Nurse Okpala because:

> I got to the door, I tried to get in, I finally did get in through the off unit staff personnel. I seen your defendant. She went to the nurse's station. I continued up. Miss Seats intercepted me, told me, "We'll go see the nurse," which was your defendant and another nurse. Your defendant took off as soon as she seen me.

(Plaintiff Dep. at 44:5-11.) Although Plaintiff claims he was denied adequate medical attention by Nurse Okpala, he testified that there were two nurses present and he was seen by the other nurse. (Id. at 25:3-5 & 44:14-15.) The nurse who saw him stated, "we'll get a doctor." (Id. at 25:21-24.)

Lastly, the records submitted by Defendant indicate it was Plaintiff who refused medical treatment on June 20, 2014. The Interdisciplinary note of Psych Tech (PT) Pullin on June 20, 2014, indicates that Plaintiff "approached RN in the unit hallway and reported he had unobserved spill in the PDR [Patient Dining Hall]," claiming that "he spilled hot soup on the left side of his chest and was burned." (Phillips Decl., Ex. B. at p. 3.) PT Pullin noted that the "RN attempted to assess" Plaintiff two times, "and both times assessments were refused." (Id.) It was also noted by PT Pullin that treatment was "offered and patient refused." (Id.)

The notes written by Registered Nurse ("RN") Narceda on June 20, 2014, at 12:40, state that "at approximately 1230," Plaintiff approached her "in the hallway and stated 'I got burned by soup.'" (Phillips Decl., Ex. B at p. 4.) Narceda asked Plaintiff where he got burned, but he simply "walked away." (Id.) Narceda also offered Plaintiff a nursing assessment, "but he refused." (Id.)

At approximately 12:45 p.m., another registered nurse observed a thick "soup like" stain on the left side of Plaintiff's shirt and pants. (Phillips Decl., Ex. B at p. 5.) When the RN asked to see

1  Plaintiff's skin, he stated, "common sense will tell you that it is red." (Id.)  Plaintiff was again offered
2  a nursing assessment, but he "refused and walked away." (Id.)
3        At 1427 hours on June 20, 2014, Plaintiff was observed by PT Palos after showing, post the
4  soup spill. (Phillips Decl., Ex. B at p. 6.) Plaintiff was dressed in boxer shorts and was observed to
5  have no redness or pink altered coloring of his skin. (Id.) Plaintiff clothing was soiled with soup on
6  the left bottom of his shirt near the buttons, and on the left upper pant leg. (Id.) Palos noted that the
7  corresponding areas on Plaintiff's body were the same color as the rest of his body/skin. (Id.)
8        Minutes later at 1440 hours, a different registered nurse conducted a follow up and again
9  offered a nursing assessment, but Plaintiff declined stating, "I don't need to be assessed by you guys."
10  (Phillips Decl., Ex. B at p. 7.) When prompted to see a doctor, Plaintiff responded that he did not want
11  to see the doctor calling him "a quack." (Id.)
12        The next day, at 1925 hours, RN Narceda conducted a follow-up. (Phillips Decl., Ex. B. at pp.
13  7-9.) Plaintiff agreed to a skin assessment of the areas on which he claimed to have spilled the soup.
14  RN Narceda's assessment noted the skin was "intact, no redness or skin discoloration noted on left
15  lower abdomen and left thigh areas." (Id. at p. 9.)
16        Based on the foregoing evidence, it is not likely that Plaintiff will succeed on the merits of his
17  claim against Defendant Okpala. Accordingly, the Court recommends that Defendant's motion for an
18  order requiring Plaintiff to furnish security be granted.
19        3.     <u>Amount of Security</u>
20        In this instance, Defendant asks that Plaintiff be required to post security in the amount of not
21  less than $31,195.00. Defense counsel submits that he has already spent roughly 83.25 hours
22  defending this matter. (Phillips Decl. ¶¶ 4-5; Whitney Decl. ¶ 4.) At the Attorney General's standard
23  billing rates, this case has cost the Department of State Hospitals and state taxpayers at least
24  $14,195.00 to date. (Phillips Decl. ¶¶ 4, 7; Ex. C.) Defendant submits that additional fees will be
25  incurred in filing a reply for this motion. Defendant further expects to incur at least $17,000.00 in
26  additional attorney's fees and other case-related costs, especially with a pending trial date. (Phillips
27  Decl. ¶ 8.)
28

"'Security' means an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." Cal. Civ. Proc. Code § 391(c).

The Court finds that $14,195.00 is supported by the evidence submitted by Defendant and is a conservative estimate of the amount expended to date.  (Phillips Decl. ¶¶ 2-7; Whitney Decl. ¶ 4; see Devereaux, 32 Cal.App. at 1587-1588 (security in the amount of $25,000 supported by evidence of affidavit by attorney.))  However, the Court does not find the additional $17,000.00 to be supported by the evidence, as no reply to the instant motion was filed and no trial date has been set.  The Court notes that although Plaintiff is proceeding in forma pauperis, that status is not a barrier to an order to furnish security.  Moran, 40 Cal.4th at 786; McColm, 62 Cal.App.4th at 1218-1219; Devereaux, 32 Cal.App.4th at 1587-1588.  Accordingly, the Court recommends that Plaintiff be ordered to furnish security in the amount of $14,195.00 before this action proceeds further.

### III.

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for an order requiring Plaintiff to post security is GRANTED in the amount of $14,195.00 pursuant to Local Rule 151(b).

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may

//
//
//
//

result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 28, 2016**

UNITED STATES MAGISTRATE JUDGE